UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DIVONE ANTOINE RICE,

               Plaintiff,

v.

UNKNOWN BRYCE et al.,

               Defendants.

_____/

Case No. 1:22-cv-462

Honorable Jane M. Beckering

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Kellogg, Unknown Party #1, Unknown Party #2, Miller, Blair, Kavanaugh, Rewerts, and Russell. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Bryce and Nesbitt: Plaintiff's access to the courts claim, Eighth Amendment claims, Fifth Amendment claims, and Fourteenth Amendment Due Process Clause and Equal Protection Clause claims. Additionally, Plaintiff's First Amendment retaliation claim against Defendant Bryce will be dismissed for failure to state a

claim. Plaintiff's claims against Defendants Bryce and Nesbitt regarding the interference with his legal mail, and Plaintiff's First Amendment retaliation claim against Defendant Nesbitt remain in the case. Plaintiff's state law claims against Defendants Bryce and Nesbitt also remain in the case.

## Discussion

### I.     Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues MDOC Grievance Manager Richard Russell and the following DRF officials: Correctional Transportation Officer Unknown Bryce; Correctional Officers Unknown Nesbitt, Unknown Kellogg, Unknown Party #1 named as John Doe, and Unknown Party #2 named as Jane Doe; Prison Counselor Unknown Miller; Resident Unit Manager Unknown Blair; Mailroom Supervisor Unknown Kavanaugh; and Warden Randee Rewerts. (Compl., ECF No. 1, PageID.1–3.) Plaintiff sues Defendants Bryce, Nesbitt, Kellogg, Unknown Party #1, and Unknown Party #2 in their individual capacities. (*Id.*, PageID.2.) Plaintiff sues Defendants Miller, Blair, Kavanaugh, Rewerts, and Russell in their individual and official capacities. (*Id.*, PageID.3.)

In Plaintiff's complaint, he states that Defendant Kavanaugh was the DRF mailroom supervisor on January 18, 2022, and on this date, Defendant Kavanaugh's actions included "receiving, processing and distributing incom[ing] and outgoing mail in accordance with DRF protocol." (*Id.*, PageID.7.) Plaintiff claims that Defendant Kavanaugh was "delinquent and engaged in direct negligent [sic] in the supervision and retention relative to Plaintiff's incoming legal mail." (*Id.*) Further, Plaintiff states that Defendants Unknown Party #1 and Unknown Party #2 were working in the DRF property room on January 18, 2022, and "negligently and with

2

deliberate indifference[] passed [their] responsibility and the 3 pieces of Plaintiff's legal mail off to Defendant Bryce." (*Id.*, PageID.6)

Thereafter, later that same day, January 18, 2022, Defendant Bryce came to Plaintiff's cell, and stated, "You have 3 pieces of legal mail. But your '[racial slur] a[**]' won't be getting s[***] on my watch." (*Id.*, PageID.4.) Defendant Bryce then stated that he would "be throwing this s[***] in the trash bin where you belong." (*Id.*) That same day, Plaintiff "immediately" brought this issue "to the attention of Sergeant Hossen" (not a party) because Plaintiff "had a deadline looming in the federal appellate court." (*Id.*) Plaintiff also filed a grievance about this issue. (*Id.*)

On January 31, 2022, Plaintiff asked Defendant Nesbitt "to place his name on the list to have legal mail processed as outgoing." (*Id.*) Defendant Nesbitt stated: "I can put you on the list but it[']s not going to do you any good." (*Id.*) When Plaintiff asked Defendant Nesbitt "what he meant by his statement," Defendant Nesbitt replied, "Bryce. Grievance. Either of those ring a bell." (*Id.*) "Plaintiff was not called out to see [Defendant] Miller or [Defendant] Blair to have his outgoing legal mail processed according to facility protocol." (*Id.*) Plaintiff filed a grievance about the matter. (*Id.*)

Plaintiff claims that Defendants Miller and Blair "perfunctorily staged a 'non-investigation' into the (1) disappearance of the 3 pieces of legal mail earmarked for Plaintiff and (2) deliberately failed to call Plaintiff to process outgoing legal mail that resulted in Plaintiff missing a deadline date to submit responsive pleadings" with the United States Court of Appeals for the Sixth Circuit in action no. 20-2292. (*Id.*, PageID.4–5.) Specifically, Plaintiff alleges that on February 9, 2022, Defendant Blair, who is the immediate supervisor of Defendants Miller, Bryce, Nesbitt, and Kellogg, "was assigned the task of reviewing and determining why Plaintiff had been denied his right to have his outgoing legal mail processed in accordance with DRF protocol." (*Id.*,

PageID.6–7.) "Defendant Blair aligned and colluded with [D]efendant Miller and endorsed and circulated a fabrication, i.e., '[that Plaintiff] was called to the office and he stated he did not have any legal mail.'" (*Id.*, PageID.7.) Plaintiff states that he filed a grievance regarding these issues. (*Id.*, PageID.5.)

Subsequently, on March 15, 2022, Plaintiff approached Defendant Kellogg at the housing unit podium and requested to speak to Defendant Miller or a sergeant. (*Id.*) "Defendant Kellogg stared menacingly at Plaintiff and said: 'Get the f[***] away from the desk!'" (*Id.*) Defendant Kellogg then ordered Plaintiff to return to his cell. (*Id.*) When Plaintiff asked Defendant Kellogg "why he was talking to Plaintiff in such a disrespectful manner," Defendant Kellogg stated, "You wrote a grievance on my co-worker B[****]!" (*Id.*) As Plaintiff headed back to his cell, Defendant Kellogg followed behind Plaintiff and added: "I hate tough inmates who snitch. I'm going to get you f[*****] up. Just wait and see." (*Id.*) Plaintiff states that other inmates overhead the exchange between Defendant Kellogg and Plaintiff. (*Id.*) Thereafter, Plaintiff filed a grievance about Defendant Kellogg's "aggressive and threatening behavior." (*Id.*, PageID.6.)

With respect to Defendant Rewerts, Plaintiff alleges that Defendant Rewerts is responsible for ensuring "subordinate staff personnel follow all [MDOC] rules and regulations," and that Defendant Rewerts "condoned, enabled and encouraged any and all acts" set forth in the complaint. (*Id.*, PageID.7–8.) As to Defendant Russell, Plaintiff contends that Defendant Russell "has developed a custom and practice of distributing 'boilero-plate' [sic] language and a standardized format of 'one response fits all' issues of dispute involving prisoners in general, particularly this Plaintiff that deprives Plaintiff" of his right to due process and right to equal protection. (*Id.*, PageID.8.)

Based on the foregoing allegations, Plaintiff avers that all Defendants interfered with his right to access the courts, violated his First Amendment rights by retaliating against him, and violated his rights under the Eighth and Fourteenth Amendments, as well as under state law. (*Id.*, PageID.8, 10) Further, Plaintiff avers that Defendants Rewerts, Russell, Blair, and Miller violated his right to due process and right to equal protection under the Fifth and Fourteenth Amendments. (*Id.*, PageID.8, 9.) Additionally, liberally construing Plaintiff's complaint, as the Court is required to do, Plaintiff avers that Defendants Miller and Blair engaged in a civil conspiracy under § 1983, and that Defendants Bryce and Nesbitt interfered with his legal mail in violation of the First Amendment.[1] As relief, Plaintiff seeks compensatory and punitive damages, as well as injunctive and declaratory relief. (*Id.*, PageID.9–11.)

## II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

---

[1] Plaintiff also claims that on January 31, 2022—the date on which Plaintiff contends Defendant Nesbitt indicated that Plaintiff would be unable to send outgoing legal mail—"Plaintiff was not called out to see [Defendant] Miller or [Defendant] Blair to have his outgoing legal mail processed according to facility protocol." (Compl., ECF No. 1, PageID.4.) Later in the complaint, Plaintiff alleges in a conclusory manner that Defendants Miller and Blair "deliberately failed to call Plaintiff to process outgoing legal mail." (*Id.*, PageID.5.) Although Plaintiff makes a conclusory allegation that Defendants Miller and Blair "deliberately failed to call Plaintiff to process outgoing legal mail," Plaintiff fails to allege sufficient *facts* to show that Defendants Miller and Blair had any knowledge that Plaintiff wanted to send outgoing mail on that date. Without factual allegations showing this knowledge, Plaintiff is unable to show that Defendants Miller and Blair engaged in active unconstitutional behavior with respect to Plaintiff's outgoing mail, and therefore, any such claims against Defendants Miller and Blair will be dismissed.

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff sues Defendants Miller, Blair, Kavanaugh, Rewerts, and Russell in their individual and official capacities.[2] (Compl., ECF No. 1, PageID.3.)

---

[2] Plaintiff sues Defendants Bryce, Nesbitt, Kellogg, Unknown Party #1, and Unknown Party #2 in their individual capacities only.

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks monetary damages, as well as declaratory and injunctive relief. An official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's claims for monetary damages against Defendants Miller, Blair, Kavanaugh, Rewerts, and Russell in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States

7

Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Here, Plaintiff is no longer confined at DRF, which is where he avers that Defendants Miller, Blair, Kavanaugh, and Rewerts are employed. The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Underlying this rule is the premise that such relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Plaintiff is now incarcerated at KCF, and Defendants Miller, Blair, Kavanaugh, and Rewerts are not employed at that correctional facility. Therefore, Plaintiff cannot maintain his claims for injunctive and declaratory relief against Defendants Miller, Blair, Kavanaugh, and Rewerts, and the Court will dismiss these claims. Although it is not clear that the injunctive and declaratory relief that Plaintiff seeks with respect to Defendant Russell is prospective, because Plaintiff avers that Defendant Russell is employed by the MDOC in its Office of Legal Affairs, rather than at DRF, the Court will address Plaintiff's claims against Defendant Russell in his individual and official capacities below and will not dismiss Plaintiff's injunctive and declaratory relief claims against Defendant Russell in his official capacity based on immunity. *See infra* Part II.B.

In summary, Plaintiff's claims for monetary damages against Defendants Miller, Blair, Kavanaugh, Rewerts, and Russell in their official capacities, and claims for injunctive relief and declaratory relief against Defendants Miller, Blair, Kavanaugh, and Rewerts in their official capacities will be dismissed.

**B.      Defendants Russell & Rewerts**

**1.      Response to Grievances**

Plaintiff contends that Defendant Russell—who Plaintiff alleges "is responsible for the resolution of factual disputes arising between prison staff personnel and prisoner(s) interaction [sic] via the MDOC Grievance Policy Directive"—"has developed a custom and practice of distributing 'boilero-plate' [sic] language and a standardized format of 'one response fits all' issues of dispute involving prisoners in general," and "particularly this Plaintiff." (Compl., ECF No. 1, PageID.3, 8.)

As an initial matter, Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective

prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, although it is clear that Plaintiff disagreed with Defendant Russell's responses to his grievances and believed that Defendant Russell had a "custom" of using boilerplate responses to prisoners' grievances, because Plaintiff has no liberty interest in the grievance process—including the responses to grievances—Defendant Russell's conduct did not deprive Plaintiff of due process.

Further, the Sixth Circuit has held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason is that there must be active unconstitutional behavior. Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.* Additionally, in unpublished decisions, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied, or responded to, a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994)

(discussing that there is no constitutional right to a grievance procedure). In light of the foregoing authority, Plaintiff's claim against Defendant Russell in his individual and official capacities regarding the responses to Plaintiff's grievance appeals fails to state a claim.

### 2.    Supervisory Liability

Plaintiff also alleges that Defendants Russell and Rewerts "condon[ed], enabl[ed] and encourag[ed] the illegal actions and misconduct of their subordinate staff," (Compl., ECF No. 1, PageID.8–9), and that Defendant Rewerts is responsible for ensuring "subordinate staff personnel follow all [MDOC] rules and regulations." (*Id.*, PageID.7.)

To the extent that Plaintiff seeks to hold Defendants Rewerts and Russell liable for the actions of their subordinates, government officials, such as Defendants Rewerts and Russell, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, as discussed above, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The United States Court of Appeals for the Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

"[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendants Russell and Rewerts encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants Russell and Rewerts were personally involved in the alleged violations of Plaintiff's constitutional rights. Because Plaintiff has failed to allege that Defendants Russell and Rewerts engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against them.

### 3. Summary

For all of the reasons set forth in this section, Plaintiff fails to state a claim against Defendants Russell and Rewerts, and his claims against these Defendants will be dismissed.

### C. Defendants Unknown Party #1, Unknown Party #2 & Kavanaugh

With respect to Defendants Unknown Party #1 and Unknown Party #2, Plaintiff states that Unknown Party #1 and Unknown Party #2 worked in the DRF property room on January 18, 2022, and "negligently and with deliberate indifference[] passed [their] responsibility and the 3 pieces of Plaintiff's legal mail off to Defendant Bryce." (Compl., ECF No. 1, PageID.6.) As to Defendant Kavanaugh, Plaintiff states that Defendant Kavanaugh, the DRF mailroom supervisor, was involved in "receiving, processing and distributing" mail and was "delinquent and engaged in

direct negligent [sic] in the supervision and retention relative to Plaintiff's incoming legal mail." (*Id.*, PageID.7.)

To state a § 1983 claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter*, 532 F.3d at 575–76; *Greene*, 310 F.3d at 899. Here, Plaintiff fails to allege sufficient facts to show that Defendants Unknown Party #1, Unknown Party #2, and Kavanaugh engaged in any active unconstitutional behavior. Specifically, Plaintiff indicates that all three Defendants were working either in the DRF mailroom or property room on January 18, 2022—the day on which Plaintiff contends that Defendant Bryce prevented Plaintiff from receiving three pieces of legal mail—however, Plaintiff fails to allege sufficient *facts* to suggest that their work processing mail in the mailroom or property room had any bearing on whether Defendant Bryce delivered Plaintiff's mail. Additionally, based on the factual allegations in the complaint, it appears that Plaintiff seeks to hold Defendant Kavanaugh liable on the basis of supervisory liability. As explained above, government-official defendants, such as Defendant Kavanaugh, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.

Furthermore, although Plaintiff alleges in a conclusory manner that Defendants Unknown Party #1 and Unknown Party #2 acted with "deliberate indifference" when they "passed [their] responsibility and the 3 pieces of Plaintiff's legal mail off to Defendant Bryce," Plaintiff fails to allege any *facts* to suggest that they did in fact act with "deliberate indifference." (Compl., ECF No. 1, PageID.6.) Instead, Plaintiff's factual allegations suggest that, at most, Defendants Unknown Party #1, Unknown Party #2, and Kavanaugh acted negligently when they were

processing the mail. (*Id.*) However, a claim of negligence is insufficient to support a § 1983 claim. *See Daniels v. Williams*, 474 U.S. 327, 333–36 (1986).

For all of these reasons, Plaintiff's claims against Defendants Unknown Party #1, Unknown Party #2, and Kavanaugh will be dismissed.

### D.      First & Fourteenth Amendments Access to the Courts Claims

Plaintiff alleges that remaining Defendants Bryce, Nesbitt, Kellogg, Miller, and Blair interfered with his right to access the courts. (Compl., ECF No. 1, PageID.8–9.)

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824–28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a non-frivolous legal claim. *Lewis*, 518

U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The United States

Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into
> litigating engines capable of filing everything from shareholder derivative actions
> to slip-and-fall claims. The tools it requires to be provided are those that the inmates
> need in order to attack their sentences, directly or collaterally, and in order to
> challenge the conditions of their confinement. Impairment of any other litigating
> capacity is simply one of the incidental (and perfectly constitutional) consequences
> of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals,

habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378,

391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous

claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999)

(discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of

action . . . is an element that must be described in the complaint, just as much as allegations must

describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415

(2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the

underlying cause of action and its lost remedy must be addressed by allegations in the complaint

sufficient to give fair notice to a defendant." *Id.* at 415.

Here, Plaintiff alleges that on January 18, 2022, Defendant Bryce came to Plaintiff's cell,

and stated, "You have 3 pieces of legal mail. But your '[racial slur] a[**]' won't be getting s[***]

on my watch," and Defendant Bryce also stated that he would be throwing the mail in the trash.

(Compl., ECF No. 1, PageID.4.) That same day, Plaintiff "immediately" brought this issue "to the

attention of Sergeant Hossen" (not a party) because Plaintiff "had a deadline looming in the federal

appellate court." (*Id.*)

Further, Plaintiff alleges that when he asked Defendant Nesbitt to place him on the outgoing legal mail list on January 31, 2022, Defendant Nesbitt stated: "I can put you on the list but it[']s not going to do you any good." (*Id.*) Plaintiff states that he was not called out to see either Defendant Miller or Defendant Blair to have his outgoing mail processed, and he claims that Defendants Miller and Blair "deliberately failed to call Plaintiff to process outgoing legal mail that resulted in Plaintiff missing a deadline date to submit responsive pleadings" in action no. 20-2292, an appeal of this Court's dismissal of Plaintiff's 28 U.S.C. § 2254 habeas petition, which was pending in the Sixth Circuit at the time. (*Id.*, PageID.4–5.)

As an initial matter, Plaintiff's complaint is devoid of any allegations to suggest that Defendant Kellogg had any involvement with the alleged interference with Plaintiff's access to the courts. (*See id.*, PageID.5 (alleging that on March 15, 2022, Defendant Kellogg ordered Plaintiff to return to his cell).) For that reason alone, Plaintiff's access to the courts claim against Defendant Kellogg will be dismissed. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

With respect to the remaining Defendants, the underlying action referenced by Plaintiff, action no. 20-2292, was an appeal of this Court's dismissal of his 28 U.S.C. § 2254 habeas petition that Plaintiff filed in the Sixth Circuit. Plaintiff does not specifically allege that his claims in this action were non-frivolous. Nevertheless, assuming, without deciding, that Plaintiff's continued litigation of his § 2254 habeas petition is the type of action for which there can be an actual injury, the Court notes that the Sixth Circuit granted Plaintiff a certificate of appealability with respect to one of the issues raised in Plaintiff's § 2254 habeas petition. *See* Order, *Rice v. Rewerts*,

16

No. 20-2296 (6th Cir. July 8, 2021), (ECF No. 6). Under these circumstances, the Court determines that the claims raised in the underlying action identified by Plaintiff were not clearly frivolous.

However, Plaintiff has provided very little information about how Defendants' actions impeded Plaintiff's litigation. Although Plaintiff vaguely contends that around January 18, 2022, he "had a deadline looming in the federal appellate court," Plaintiff does not explain what the deadline was for or how the failure to deliver his three pieces of legal mail impacted his ability to meet this "looming deadline." (Compl., ECF No. 1, PageID.4.) Indeed, Plaintiff does not even identify the specific date of the deadline.

Furthermore, with respect to Plaintiff's assertion that in January 2022, he was "deprived of the right to submit legal pleadings to the federal court in Case No. 20-2022," which "resulted in Plaintiff missing a deadline date to submit responsive pleadings with the [Sixth Circuit]," a review of the publicly available docket in that case shows that Plaintiff was not precluded from filing any brief because it was late. Specifically, the Sixth Circuit's docket shows that on January 14, 2022, the Sixth Circuit granted the respondent's motion to enlarge the response time, extending the respondent's deadline to file a brief to February 11, 2022. *Rice v. Rewerts*, No. 20-2296 (6th Cir. Jan. 14, 2022), (ECF No. 18). Plaintiff then had twenty-one days from the date on which the respondent filed his brief to file an optional reply brief. Plaintiff submitted a letter to the Sixth Circuit on February 7, 2022, requesting that the Sixth Circuit re-send its January 14, 2022, ruling letter to him because he had not received it. *Id.*, (ECF No. 19). The ruling letter was then re-sent to Plaintiff. Thereafter, the respondent filed his brief on February 11, 2022. *Id.*, (ECF No. 20). On March 3, 2022, Plaintiff submitted a letter to the Sixth Circuit, advising the court that he had not received the respondent's brief. *Id.*, (ECF No. 21). The Sixth Circuit directed the respondent's counsel to re-send the brief to Plaintiff, and on March 15, 2022, Plaintiff filed a motion to extend

the time to file his reply brief. *Id.*, (ECF No. 22). The Sixth Circuit granted Plaintiff's extension request, *id.*, (ECF No. 23), and Plaintiff timely filed his reply brief on April 4, 2022. *Id.*, (ECF No. 24). Therefore, the Sixth Circuit did not preclude Plaintiff from filing any brief because it was late.

Under these circumstances, Plaintiff has failed to show any lost remedy. Because Plaintiff has failed to show any lost remedy, he has failed to state a claim for denial of access to the courts. Plaintiff's access to the courts claim therefore will be dismissed.

### E.   First Amendment Retaliation Claims

Plaintiff alleges that remaining Defendants Bryce, Nesbitt, Kellogg, Miller, and Blair violated his First Amendment rights by retaliating against him. (Comp., ECF No. 1, PageID.8, 10.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

#### 1.   Protected Conduct

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding

the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). In this action, Plaintiff references filing grievances. Because the filing of grievances constitutes protected activity, the Court assumes, without deciding, that Plaintiff has stated the first element of a First Amendment retaliation claim with respect to his grievances.

Furthermore, the filing of a civil rights action is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002). And, a prisoner's right to receive mail and send mail, including legal mail, is subject to the protections of the First Amendment. Therefore, at this stage of the proceedings, the Court assumes, without deciding, that Plaintiff's attempts to send and receive legal mail constitute protected conduct.

### 2.     Adverse Action

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell*, 308 F.3d at 606 (quoting *Thaddeus-X*, 175 F.3d at 398) (emphasis in quotation).

### a.     Mail Tampering

Plaintiff contends that on January 18, 2022, Defendant Bryce prevented Plaintiff from receiving three pieces of legal mail. (*See* Compl., ECF No. 1, PageID.4.) Further, Plaintiff alleges that on January 31, 2022, when he asked Defendant Nesbitt to place him on the outgoing legal

mail list, Defendant Nesbitt stated: "I can put you on the list but it[']s not going to do you any good." (*Id.*) Plaintiff also alleges that on January 31, 2022, he "was not called out to see [Defendant] Miller or [Defendant] Blair to have his outgoing legal mail processed according to facility protocol." (*Id.*)

At this stage of the proceedings, the Court assumes, without deciding, that alleged the interference with Plaintiff's legal mail constitutes adverse action.

### b.      Defendants Blair's and Miller's Investigation

Plaintiff alleges that on February 9, 2022, Defendant Blair "was assigned the task of reviewing and determining why Plaintiff had been denied his right to have his outgoing legal mail processed in accordance with DRF protocol." (Compl., ECF No. 1, PageID.6–7.) Plaintiff contends that "Defendant Blair aligned and colluded with [D]efendant Miller and endorsed and circulated a fabrication, i.e., '[that Plaintiff] was called to the office and he stated he did not have any legal mail.'" (*Id.*, PageID.7.) Plaintiff's factual allegations regarding this "investigation" are scarce. Plaintiff does not allege that Defendants Blair's and Miller's investigation had the potential to result in any restrictions or fewer privileges. *See Hill*, 630 F3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"). Although it is clear that Plaintiff disagreed with Defendant Blair's and Defendant Miller's conclusions in their "investigation" regarding the processing of Plaintiff's legal mail, Plaintiff was not entitled to have Defendants Blair's and Miller's investigation resolve in his favor. The Court therefore concludes that Defendants Blair's and Miller's investigation does not constitute an adverse action.

### c.      Verbal Threats

A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g.*, *Thaddeus-X*, 175 F.3d at 396, 398 (discussing threat of physical harm); *Smith v. Yarrow*, 78 F.

App'x 529, 542 (6th Cir. 2003) (discussing threat to change drug test results). However, certain threats or deprivations are so vague or *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

Here, Plaintiff alleges that on March 15, 2022, when he approached the housing unit podium and requested to speak with Defendant Miller or a sergeant, "Defendant Kellogg stared menacingly at Plaintiff and said: 'Get the f[***] away from the desk.'" (Compl., ECF No. 1, PageID.5.) Defendant Kellogg ordered Plaintiff to return to his cell, and as Plaintiff headed back to his cell, Defendant Kellogg followed behind Plaintiff and added: "I hate tough inmates who snitch. I'm going to get you f[*****] up. Just wait and see." (*Id.*)

The Court concludes that such vague statements would not deter a person of ordinary firmness from exercising his or her First Amendment rights. *See, e.g.*, *Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Shisler v. Golladay*, No. 2:19-cv-80, 2019 WL 2590693, at *4 (W.D. Mich. June 25, 2019) (concluding that Golladay's threat that the ticket would be the least of the plaintiff's worries was "simply too vague" to support a First Amendment retaliation claim); *Dahlstrom v. Butler*, No. 2:18-cv-101, 2019 WL 91999, at *11 (W.D. Mich. Jan. 3, 2019) ("Krause's threat[—to 'get' a prisoner who files a grievance on Krause and 'steps out of line'—] is too vague and non-specific to deter a person of ordinary firmness from engaging in protected conduct."); *Yates v. Rogers*, No. 2:18-cv-180, 2018 WL 6629366, at *7 (W.D. Mich. Dec. 19, 2018) ("Defendant's vague threat to 'get' Plaintiff does not carry the same seriousness . . . ."); *Johnson v. Govern*, No. 2:17-cv-125, 2018 WL 6321548, at *2 (W.D. Mich. Dec. 4, 2018) ("Govern's alleged threat to 'put a case' on Johnson . . . was too

vague to constitute adverse action."). Accordingly, Plaintiff's retaliation claim against Defendant Kellogg is properly dismissed.

### 3.    Retaliatory Motive

To satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

#### a.    Defendant Bryce

Plaintiff alleges that after Defendant Bryce failed to deliver Plaintiff's legal mail on January 18, 2022, Plaintiff filed a grievance regarding the matter. (Compl., ECF No. 1, PageID.4.) Plaintiff also alleges that he had been sending and receiving legal mail, and Defendant Bryce prevented him from receiving his legal mail on January 18, 2022. (*See id.*)

Although, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the Sixth Circuit, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

With respect to the grievance that Plaintiff filed against Defendant Bryce, Plaintiff filed this grievance *after* Defendant Bryce did not give Plaintiff his legal mail. As such, Plaintiff cannot

show that the later filing of the grievance motivated Defendant Bryce's actions on January 18, 2022.

However, Plaintiff's allegations regarding the free flow of his legal mail and Defendant Bryce preventing Plaintiff's receipt of three pieces of legal mail on January 18, 2022, suggest temporal proximity. Although Plaintiff's allegations suggest temporal proximity, Plaintiff fails to allege any other facts to suggest that Defendant Bryce acted with a retaliatory motive. Under these circumstances, the suggestion of temporal proximity alone is insufficient to show a retaliatory motive. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987) ("[A]lleging merely the ultimate fact of retaliation is insufficient."). Furthermore, such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)).

Therefore, assuming that Plaintiff has alleged sufficient facts to show that Defendant Bryce's actions constituted an adverse action, because Plaintiff fails to allege any facts to suggest that Defendant Bryce was motivated by Plaintiff's protected conduct, Plaintiff fails to state a First Amendment retaliation claim against Defendant Bryce. Accordingly, Plaintiff's First Amendment retaliation claim against Defendant Bryce will be dismissed.

### b.    Defendants Miller & Blair

With respect to Defendants Miller and Blair, Plaintiff alleges that they retaliated against him when they did not call him out "to have his outgoing legal mail processed" on January 31, 2022. (Compl., ECF No. 1, PageID.4.) However, Plaintiff merely alleges the ultimate fact of

23

retaliation. Plaintiff alleges no facts from which to reasonably infer that Defendant Miller's and Blair's actions were motivated by his protected conduct. Plaintiff's "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983 and are subject to dismissal. *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez*, 826 F.2d at 1538–39); *see also Murray*, 84 F. App'x at 556. Plaintiff's First Amendment retaliation claims against Defendants Miller and Blair, therefore, will be dismissed.

### c.      Defendant Nesbitt

Plaintiff alleges that on January 31, 2022, Defendant Nesbitt advised Plaintiff that Defendant Nesbitt could "put [Plaintiff] on the [outgoing mail] list but it[']s not going to do . . . any good." (Compl., ECF No. 1, PageID.4.) When Plaintiff asked Defendant Nesbitt "what he meant by his statement," Defendant Nesbitt replied, "Bryce. Grievance. Either of those ring a bell." (*Id.*) At this stage of the proceedings, taking Plaintiff's allegations as true and in the light most favorable to Plaintiff, Plaintiff's First Amendment retaliation claim against Defendant Nesbitt may not be dismissed on initial review.

### 4.      Summary

For the reasons set forth in this section, Plaintiff's First Amendment retaliation claims against Defendants Kellogg, Bryce, Miller, and Blair will be dismissed. Plaintiff's First Amendment retaliation claim against Defendant Nesbitt remains in the case.

### F.      Eighth Amendment Claims

Plaintiff vaguely contends that his Eighth Amendment rights were violated. (*See* Compl., ECF No. 1, PageID.8, 10.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The

24

Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that Defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, Plaintiff alleges in a conclusory manner that Defendants acted with "deliberate indifference." (*See, e.g.*, Compl., ECF No. 1, PageID.8, 10.) As an initial matter, Plaintiff's conclusory reference to "deliberate indifference" is insufficient to state an Eighth Amendment claim.

Furthermore, with respect to Plaintiff's assertion that Defendant Bryce used a racial slur when talking to Plaintiff and that Defendant Kellogg spoke in a "disrespectful manner" to Plaintiff when he followed Plaintiff to Plaintiff's cell, (*id.*, PageID.4–5), although unprofessional, allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland Cnty.*, 758 F.2d 147, 152 (6th Cir. 1985); *Jones Bey v. Johnson*, 248 F. App'x 675, 677–78 (6th Cir. 2007) (finding that prison guard's use of racial slurs and other derogatory language against state prisoner did not rise to level of a violation of the Eighth Amendment); *Williams v. Gobles*, No. 99-1701, 2000 WL 571936, at *1 (6th Cir. May 1, 2000) (holding that the occasional or sporadic use of racial slurs does not rise to a level of constitutional magnitude).

For these reasons, Plaintiff's Eighth Amendment claims fail to state a claim upon which relief may be granted and will be dismissed.

### G.  Equal Protection Clause & Due Process Clause Claims

#### 1.  Fifth Amendment

Plaintiff suggests that his equal protection rights and due process rights under the Fifth Amendment were violated. (*See* ECF No. 1, PageID.3.) The Fifth Amendment, however, applies only to claims against federal employees. In this action, Plaintiff sues employees of the MDOC.

26

Plaintiff, therefore, cannot maintain his Fifth Amendment claims, and those claims will be dismissed. *See, e.g.*, *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government").

### 2.    Fourteenth Amendment

#### a.    Equal Protection

Plaintiff vaguely contends that his right to equal protection under the Fourteenth Amendment was violated. (Compl., ECF No. 1, PageID.8–9.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not allege that a fundamental right is implicated in this case or that he was discriminated against because he is a member of a suspect class; his claims therefore are not subjected to strict scrutiny.

To state an equal protection claim in a class-of-one case, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). "[T]he hallmark of [a 'class-of-one'] claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored

27

class." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (alterations in original) (citations omitted); *see Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Id.* (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" (citation omitted)). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018).

Plaintiff's equal protection claims are wholly conclusory. Plaintiff makes a conclusory reference to an alleged violation of his right to equal protection; however, Plaintiff fails to provide any explanation as to how this right was violated. Moreover, Plaintiff fails to allege any facts to show that his fellow inmates were similar in all relevant aspects. Plaintiff's conclusory allegations simply do not suffice to state a claim. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). Accordingly, the Court will dismiss Plaintiff's Fourteenth Amendment equal protection claims.

### b.   Procedural Due Process

Plaintiff claims that Defendants Miller and Blair violated his right to due process because they "perfunctorily staged a 'non-investigation' into the . . . disappearance of the 3 pieces of legal mail earmarked for Plaintiff." (Compl., ECF No. 1, PageID.4–5.) Specifically, Plaintiff claims that on February 9, 2022, Defendant Blair "was assigned the task of reviewing and determining why Plaintiff had been denied his right to have his outgoing legal mail processed in accordance with DRF protocol," (*id.*, PageID.6–7), and "Defendant Blair aligned and colluded with [D]efendant Miller and endorsed and circulated a fabrication, i.e., '[that Plaintiff] was called to the office and he stated he did not have any legal mail.'" (*Id.*, PageID.7.)

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

With respect to Plaintiff's claims regarding Defendants Miller's and Blair's "investigation" into the issues related to Plaintiff's legal mail, Plaintiff's allegations are scarce. Plaintiff does not explain the context in which Defendants Miller and Blair investigated these issues. However, Plaintiff alleges that he filed grievances regarding the issues with his legal mail (*see* Compl., ECF No. 1, PageID.4), and it appears that Defendants Miller and Blair likely investigated these allegations during the grievance review process at DRF.

As discussed above, Plaintiff has no due process right to file a prison grievance. *See supra* Part II.B.1. There exists no constitutionally protected due process right to an effective prison grievance procedure, and Michigan law does not create a liberty interest in the grievance procedure. *See supra* Part II.B.1 (citing cases). Because Plaintiff has no liberty interest in the grievance process, Defendants Miller's and Blair's conduct during the grievance process did not deprive Plaintiff of due process.

Moreover, with respect to Plaintiff's vague allegation regarding his right to "fair and just treatment in formal and official investigation(s)," (Compl., ECF No. 1, PageID.9), Plaintiff alleges no facts to suggest that, as a result of the "investigation," he stood to be deprived of his life, liberty, or property, such that he would be entitled to due process of law. *See, e.g.*, *Wolff*, 418 U.S. 539 (setting forth the minimum process required for prison disciplinary proceedings that implicate a liberty interest).

For all of these reasons, Plaintiff fails to state a Fourteenth Amendment procedural due process claim, and thus, his procedural due process claims will be dismissed.

### c.    Substantive Due Process

Plaintiff vaguely states that Defendants "engaged in deliberate indifference to Plaintiff's constitutional rights that is contrary to the Eighth and Fourteenth Amendment[s]." (Compl., ECF No. 1, PageID.10.) To the extent that Plaintiff intended to raise a substantive due process claim

regarding Defendants' alleged "deliberate indifference," he fails to state such a claim. "Substantive

due process 'prevents the government from engaging in conduct that shocks the conscience or

interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289

F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Substantive due process . . . serves the goal of preventing governmental power from being

used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v.*

*Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard*

*v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the

decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional

protection' against a particular sort of government behavior, 'that [a]mendment, not the more

generalized notion of substantive due process, must be the guide for analyzing these claims.'"

*Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394

(1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard

for analyzing claims involving unreasonable search or seizure of free citizens). If such an

amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*,

519 F. App'x 911, 923 (6th Cir. 2013). In this case, Plaintiff is a convicted prisoner, and as such,

his deliberate indifference claims are properly analyzed under the Eighth Amendment. *See supra*

Part II.F. Consequently, any intended substantive due process claim will be dismissed.

### H.     Civil Conspiracy Under § 1983

Liberally construing Plaintiff's complaint, as the Court is required to do, the factual

allegations suggest that Plaintiff believed that Defendants Miller and Blair engaged in a civil

conspiracy as related to their investigation into Plaintiff's receipt, or lack thereof, of his legal mail and his ability to send outgoing legal mail. (*See, e.g.*, Compl., ECF No. 1, PageID.7.)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, Plaintiff alleges in a conclusory manner that "Defendant Blair aligned and colluded with [D]efendant Miller and endorsed and circulated a fabrication, i.e., '[that Plaintiff] was called to the office and he stated he did not have any legal mail.'" (Compl., ECF No. 1, PageID.7.) However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no *facts* that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. Although it is clear that Plaintiff disagreed with Defendants Miller's and Blair's "investigation" regarding Plaintiff's incoming and outgoing legal mail, the

fact that these two Defendants conducted an investigation into the matter is insufficient, on its own, to suggest the existence of a civil conspiracy.

As the United States Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, for these reasons, Plaintiff fails to state a plausible claim of conspiracy.

I.      **Interference with Legal Mail Claims**

Plaintiff avers that Defendants Bryce and Nesbitt interfered with the free flow his incoming and outgoing legal mail.

The ability of a prisoner "to receive materials of a legal nature" implicates a fundamental right. *Kensu*, 87 F.3d at 174; *see Sallier v. Brooks*, 343 F.3d 868, 873–74 (6th Cir. 2003) (finding that legal mail is entitled to a heightened level of protection to avoid impinging on a prisoner's legal rights, the attorney-client privilege, and the right to access the courts). Courts have therefore extended protections to prisoners' legal mail that do not exist for general mail. For example, although "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security," *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993), "the opening of 'legal mail' should generally be in the inmate's presence . . . ." *Kensu*, 87 F.3d at 174 (citing *Wolff*, 418 U.S. at 576–77).

Further, with respect to outgoing mail, "isolated instances of interference with prisoners' mail" may not rise to the level of a constitutional violation under the First Amendment. *See*

*Johnson v. Wilkinson*, 229 F.3d 1152 (6th Cir. 2000) (citing *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997)); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated incidents" of interference with prisoners' rights do not rise to the level of a First Amendment violation). However, repeated instances of interference with a prisoner's mail, such as repeatedly opening the prisoner's legal mail outside of his presence may state a claim upon which relief may be granted. *See, e.g.*, *Greeno v. Litscher*, 13 F. App'x 370, 376 (7th Cir. 2001) (finding that "repeated instances of a prisoner's legal mail being opened outside of his presence are actionable" (citations omitted)).

Here, Plaintiff alleges that Defendant Bryce failed to deliver Plaintiff's legal mail and Defendant Nesbitt prevented Plaintiff from sending legal mail. At this stage of the proceedings, taking Plaintiff's allegations as true and in the light most favorable to Plaintiff, Plaintiff's First Amendment claims against Defendants Bryce and Nesbitt regarding their interference with his legal mail may not be dismissed on initial review.

### J.    State Law Claims

In addition to Plaintiff's federal claims, Plaintiff claims that Defendants violated his rights under state law. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law or MDOC policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants violated state law or MDOC policy fail to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues."

34

*Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

With respect to Defendants Kellogg, Unknown Party #1, Unknown Party #2, Miller, Blair, Kavanaugh, Rewerts, and Russell, because Plaintiff's federal claims against these Defendants will be dismissed, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims against them. Therefore, Plaintiff's state law claims against Defendants Kellogg, Unknown Party #1, Unknown Party #2, Miller, Blair, Kavanaugh, Rewerts, and Russell will be dismissed without prejudice to Plaintiff's ability to bring those claims in the state courts. As to Defendants Bryce and Nesbitt, because Plaintiff continues to have pending federal claims against Defendants Bryce and Nesbitt, the Court will exercise supplemental jurisdiction over his state law claims against Defendants Bryce and Nesbitt.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Kellogg, Unknown Party #1, Unknown Party #2, Miller, Blair, Kavanaugh, Rewerts, and Russell will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Bryce and Nesbitt: Plaintiff's access to the courts claim, Eighth Amendment claims, Fifth Amendment claims, and Fourteenth Amendment Due Process Clause and Equal Protection Clause claims. Additionally, Plaintiff's First Amendment

retaliation claim against Defendant Bryce will be dismissed for failure to state a claim. Plaintiff's claims against Defendants Bryce and Nesbitt regarding the interference with his legal mail, and Plaintiff's First Amendment retaliation claim against Defendant Nesbitt remain in the case. Plaintiff's state law claims against Defendants Bryce and Nesbitt also remain in the case.

An order consistent with this opinion will be entered.


Dated:   __October 17, 2022__                    __/s/ Jane M. Beckering_____
                                                 Jane M. Beckering
                                                 United States District Judge